Good morning. May it please the Court, I'm Lori Vogel, Counsel for Debra Milke, the appellant in this case. With me this morning is Michael Kimmerer. I'm going to focus this morning on the interrogation-confession issue. I'm also prepared, the Court has questions on the sentencing issue. If the Court has questions regarding the ineffective assistance claim, Mr. Kimmerer would like to address those. And I'd like to reserve five minutes for rebuttal. I'm sorry, what is Mr. Kimmerer going to do? The ineffective assistance of counsel claim. The one that's presented in your briefs? Yes, yes, Your Honor. There have been other ones along the way. Your Honor, I can answer any questions relating to the interrogation and the confession, including the uncertified ineffective assistance claims that deal with trial counsel's performance at the suppression hearing, and appellate counsel's failure to raise this issue on direct appeal, everything relating to this issue, and sentencing. Okay. Debra Milke was condemned to death solely on the basis of the uncorroborated testimony. It's thought of in an interesting way. She was condemned to death. Why do you say that? Your Honor, she was sentenced to die. I think accurately you'd say she was sentenced to death. Isn't that the accurate statement of what happened to her? But I don't want to use your time on that point. I was just surprised because if you're going to make an argument that's going to be other than on this record, we're going to have some difficulty with it. I agree, Your Honor. It is on this record. She was sentenced to die solely on the basis of an uncorroborated confession. And isn't that a conclusion that somebody can reach, but not everybody can reach? That it is uncorroborated in this case? No, you said solely. Yes, Your Honor. No, I don't believe so. Other than character evidence that can – Justice Salvate is – What about statements of her relatives? They have absolutely no personal information relating to this. No, but when you say solely, we're going to hear it and we've reviewed the record. But when you keep giving us these editorial slants, it makes it a little difficult to get to the heart of the matter. And I hope you're going to get to the heart of the matter. I'm going to get to the heart of the matter, Your Honor, other than the character evidence, the only direct evidence. You say character evidence. As I understand character evidence, character evidence is circumstantial evidence of acts committed by a person that show a trait of character to show action on the time involved consistent with that character. That wasn't exactly what the testimony by the relatives and friends and officers were, what you call lack of corroboration. But the evidence was evidence of an intent or a state of mind of dislike for her child and wished to be away from her child. That evidence seems to me very probative on the issue of premeditation. Your Honor – And this is a first-degree murder case. This is a first-degree murder case, Your Honor. Unfortunately, as I set forth in the briefs, first of all, Ms. Mielke's father and sister were both heavily influenced. That's our position, that the record shows that they were both heavily influenced by Detective Salvate prior to trial. Secondly, because of the ineffective assistance of counsel – Now, they were heavily influenced. Is there anything in the record which shows that he strung an arm before they took the stand? Your Honor, what it shows, first of all, as to Sandra Pickenspaw, Deborah's sister, the record does show that he heavily influenced her in her interview. She actually tape-recorded that when Detective Salvate came, and it shows throughout the course of that interview, Detective Salvate, through a combination of untruths and through influencing Sandra and working with her, what he knew to be a pretty strong sibling rivalry with Sandra, he manipulated her throughout that interview. And the interview itself is very clear in showing that it wasn't just a question-answer sort of format with Salvate. He – you know, and then she afterwards also was interviewed by post-conviction counsel Anders Rosenquist, and he tape-recorded that interview. And she talks about a variety of other things that Salvate said to her, pressured her, told her she was nine months pregnant when he was trying to get in touch with her, called her repeatedly, said that she would have to induce the baby early if she didn't allow him to come and meet with her. Then he basically called and said, I'm going to be there tomorrow, and we need your testimony, and you need to testify against your sister, and put an enormous amount of pressure on her. And then, as her tape-recorded interview, that she tape-recorded herself. I don't know how any of this helps your client. You know, this may not have been what we'd hope and expect the police to do, but the evidence of the sister came before the jury, and the jury heard it. And as Judge Baer has suggested, the evidence was not character evidence. It was corroborative, perhaps not strongly corroborative, but it's corroborative in the sense that it showed dislike for or dissatisfaction with her status as a mother. Now, how they got there is the stuff of cross-examination, and just saying, gee, it's unfair. You know, I don't see where that helps your client in any way. What is the constitutional hook here? Your Honor, first of all, there is a combination. Overall, in the course of this trial, there was a combination both through ineffective assistance of counsel in failing to call Deborah's mother, and failing to call witnesses, including Patricia. That's one of the uncertified claims? No, Your Honor. Those are certified, yes. Your Honor, those are the ineffective assistance of counsel claims that are certified, are the failure to call witnesses who could help to have supported Deborah's position that she was a good mother. But that's a wholly different analysis. Does that say, accepting what happened at trial, and accepting the testimony that came in from the sister and others, counsel could have done a better job by presenting other witnesses, and let's say we agree with you on that, we then say, well, okay, so now you would throw in, we'd leave in place the evidence that was presented, and we'd say, well, if counsel had brought in this other evidence, we would have changed the result. So that's part of the statistical analysis and part of the prejudice analysis. That's correct, Your Honor. It wouldn't in any sense erase the evidence that did come in. And I'm still back at Judge Baird's question, which I don't think you've answered adequately, and that is, it wasn't just the confession, there was, in fact, corroborative evidence. It may have been corroborative evidence you wish hadn't come in. It may be corroborative evidence that could have been mitigated by additional evidence. But the fact of the matter is the answer to Judge Baird's question, if I remember the way he phrased it, is yes. There was other evidence. It was not just character evidence. I think that's how Judge Baird phrased the question. And you don't really disagree with that, do you? No, Your Honor, I don't. And you don't really have a Jackson claim here, right? A substantial evidence claim here. You're not raising a claim that there was insufficient evidence to support the verdict. That's not one of the claims raised in the application. No, Your Honor. Our position is that, overall, the admission of the uncorroborated confession, together with the admission of the other evidence regarding Deborah's performance as a mother and her family. You're aiming too far and too high. I mean, all you really have to say is the confession came in improperly and it was highly damaging. It doesn't have to be the only thing. It doesn't have to be, right? I understand, Your Honor. And, you know, if you manage to knock out the confession, then it's a different ballgame. And I think you're fighting for too much by saying, well, there was nothing else. Even if there were other things, if you were to manage to knock out the confession, you would obviously have served a crime. And this is what we need to get onto, is why, you know, rather than fighting these sort of side battles about whether or not, whether there was anything else. And can I say solely, I apologize, what I'm really talking about is that the confession is uncorroborated. What Judge Ferris has said is a very, very fine observation, and it's something that counts. I don't mean to lecture, but sometimes you lose credibility by overstating. And you don't need to overstate here. Obviously, the confession was very important. It doesn't have to have been the sole thing that convicted or anything else. It's obviously something that, if improperly admitted, would change this landscape. I agree. So that's all you really need to say. I do agree with that, Your Honor. And, again, just to clarify what I'm really saying is that there's no physical evidence linking her. We really have read the briefs and the records, so we, as you can tell, we really do know what came in. Correct. And I can't speak for my colleagues, but at least to me, if you manage to knock out the confession, to me the case would look very different. So that's all you really need. Okay. So why don't you just go to that issue. Thank you. First of all, Detective Saldate, as you are aware, interrogated Deborah in a room alone, no witness, no tape recording. Didn't have her sign any statements. She was denied confession. Was there a Miranda card? Yes, Your Honor. She claims that she was. Was there a Miranda card that she signed? Oh, no, Your Honor. She did not sign a waiver. In 22 years or 23 years, I've never seen a case where there hasn't been a signed Miranda card. There was no signed Miranda card. There may have been. I just don't remember. I should say that. Exactly. And our position is that the judges, the state court's finding that Deborah waived her Miranda rights is objectively unreasonable because it really is just a credibility determination that was not, first of all, not based on any corroboration. She just heard Deborah and heard Detective Saldate and chose to do it. But that's normally enough. If you have two witnesses, I mean, we do this all the time. He said, she said, right, you know, we're in a room together. He propositioned me. I don't mean it. I mean, let's say this were just a civil case, sexual harassment, let's say, for example. There was two of us. He propositioned me. I slapped him. I got fired, right? And that's different, Your Honor, from a situation involving an interrogation where the credibility issue centers on what an interrogating officer is saying happened alone with the woman. How is it constitutionally different? First of all, this court has held that it's constitutionally different in Taylor v. Maddox, that that type of credibility determination is not entitled to the same degree of deference that other types of credibility determinations are entitled to. Secondly, from going back to Miranda and even before that, the court, the whole purpose of Miranda and the whole crux of Miranda is emphasizing that where a police detective creates the very conditions by which a defendant cannot corroborate their own, what happened in that room, that the state is held to a higher burden of proof in proving a waiver of Miranda or proving a waiver of their right. There's no question. Your own client, Noki, had Kessler or was it Kessler, Kiesel, the psychiatrist? Dr. Cassell. Cassell. Yes, Your Honor. He testified that she told him that she had been Mirandized, right? Yes, Your Honor. The claim is not that she has been Mirandized. It's the claim that she claimed that she asserted her right to an attorney at the beginning. And your claim is that it is an unreasonable finding of fact for the trial court to have found that Saldate did not hear because she did not say that she wanted an attorney until the end of the interrogation. That's correct, Your Honor. And why do you say that that is an unreasonable finding of fact given the fact that Saldate so testified? And the trial court on two occasions, once on the suppression hearing and once on the post-conviction relief hearing, made a finding that there was no request for an attorney either before or after the interview began. First of all, Your Honor, it's an unreasonable determination because the very admission or the very statement by Debra that the state court relies on in saying that she refused to be recorded is also the same statement where Debra claims that she asserted her right to an attorney. But the state court didn't rely solely on that statement. The state court relied on what Saldate said. There was no request for an attorney. That's correct, Your Honor. And when you have a situation like this where the detective has created a situation where she is unable to corroborate because all the power is in control, is in the control of the police officer, Miranda and all of these people. Do you have any Supreme Court cases that say that the situation is different where the defendant cannot corroborate? Yes, Your Honor. Kate, excuse me, from Taylor v. Maddox, obviously. That was written by Judge Kaczynski. First of all. I, I, I, I. Yes. It's almost as good as you, but I'm sorry. Yes, Your Honor, it is. But Taylor v. Maddox involved a 16-year-old boy with a three-hour gunpoint interrogation at his home. Right. Somewhat different. Somewhat different. And an immediate phone call afterwards to a lawyer. As soon as he got out, he called the lawyer and said, they made me confess. I did nothing. That's correct, Your Honor. She actually, when she was in the receiving area of the jail, an investigative reporter who didn't know her from Adam, spoke with her and has, has indicated and announced to David that he was, that she was shocked and completely confused when he said that police claimed she had confessed. Can I walk you back a step or two from where you. Follow Judge Beyer? On the waiver? Yes, Your Honor. Well, you, and I'm trying to just reconstruct accurately what, what you exchanged. But Judge Beyer asked you about her statement to the psychiatrist that she'd been Mirandized. Now, there are two steps in the process of being Mirandized. I, I, I'm not trying to put words in your mouth or, or suggest anything. I'm just trying to make sure what it is you're conceding and what it is you're not conceding. The one step is the officer says you have the right to remain silent and all of those things that we all. She concedes that. The next step is that she waives it. There's a step before that, and that is whether she comprehended it. And she. Okay, there's a step. And, and there's evidence that she indicated that she did not fully comprehend that. And Dr. Cassell confirmed that. Okay. In his interview of her. Okay. Did the state court make findings on the. On the comprehension. On the comprehension. Yes, Your Honor, she did. It did make findings. Yes. How about the question of waiver? And on the waiver. But you're not conceding comprehension. No, Your Honor. No, Your Honor, we are not. Okay. So, so you're conceding that the officer read her Miranda warnings or cited her Miranda warnings. Yes, Your Honor. You're not conceding comprehension. Not full comprehension. Do we, any of us have full comprehension? And the next step is waiver. That's correct. And what is the status of that? Are you conceding that? No, Your Honor. Were there findings on that? No. That, in fact, that is our main Miranda argument. That she did not. And that there wasn't sufficient evidence. So, so the next step after that is having waive or not waive. Does she affirmatively ask counsel? But that's a different step in the process. Yeah, but if she. She could. She could. That's correct. If there's no evidence. She could. She could fail to waive. That's correct. And then ask counsel. And assertive counsel. But she can also crave and ask counsel later. And, and, and, as I understand that my Supreme Court law is up to date, as soon as she makes that request, the interrogation must stop. That's correct. So, you see, you've got two sticking points. You've got the waiver point. You don't think there was waiver. No, Your Honor. And you don't think. Now, what was the evidence on waiver and what were the findings on waiver? Detective Saldate said he did not testify that he asked her if she wanted to waive those rights and talk to him. Even he did not state that. You've got to tell me more. What is the evidence? The evidence. The state court is being asked to make a finding. The state has an obligation to make an affirmative showing that a waiver has been obtained. That's correct, Your Honor. That finding, if it was made by the trial court, has to be supported by evidence in the record. Absence of evidence is not evidence. Absence of evidence is. So, you need to bore in on what evidence was there before the trial judge on either from Saldate or from her or from her, what she told her psychiatrist or, you know, some other way. What is the actual testimony evidence on the question of waiver? We don't have a card. We don't have a signed card. Yes, Your Honor. Detective Saldate says that he Mirandized Deborah and she indicated she understood. She started to cry. He repeated that he would not tolerate that and was there to gather the truth and that she then began talking in a normal, even voice. Does she say she waived her rights? No, Your Honor. Does anybody in that hearing say she waived her rights? No, Your Honor. The only thing the judge found... But you're not going to find something when opposing counsel stands up, he's not going to pull a rabbit out of their head, is he, and tell me, yes, there was something there. No. The factual findings by the judge are that Deborah was properly Mirandized but notwithstanding her emotional state at the time, she understood her rights and at no time did she request an attorney either before or after being advised... Does she make a finding that she waived? No. How about this? The defendant was given a free choice to discuss, admit, or deny or refuse to answer questions. To answer questions, that's correct. The defendant voluntarily, knowingly, and intelligently relinquished her right to counsel and her right to remain silent. Correct. Is there anything there other than the word waiver that doesn't establish a waiver? It seems to me to be. There are no facts that that's based on, Your Honor. So you answer to my earlier question as to whether there was a finding on waiver now is yes, there was a finding on waiver. There was a factual finding, there was no evidence to support it. There was no evidence to support it. That's correct. And then, as to... You don't have to do it now. You do it when you get to it. But you're saying the whole thing is whether she asked for counsel and I'm wondering which language because we reviewed it. And I actually did already say earlier that she states that Saldate read her her Miranda rights, he asked if she understood, she said, no, I've never been in trouble before, after which he said, do you want this interrogation recorded? Do you want me to record this? And she said, no, I want a lawyer. And she repeated that. And that was Saldate's testimony. That was Deborah's testimony, Your Honor, all the way throughout trial. What did Saldate say? Saldate said that he read her her Miranda rights, that he asked if she understood, that she nodded her head yes, and that she started to cry, after which he said, I'm not going to tolerate that. I'm here to get the truth. And that Deborah then said, what do you want? What do you want me to say? And that he said, I want the truth. And then she started to confess. And she also said, Saldate also said that at the end of the interview, she asked to have her father get her an attorney. That's correct, Your Honor. That was the first time Saldate says that the word attorney was used by her. He had used the word attorney in the Miranda warnings. That's correct. And the first time she said the word attorney was at the end of the interview, according to Saldate. That's correct, Your Honor. One thing that I think is very important in addition to the fact, you know, we have a situation here with a detective who has both admitted on this record and in other cases that she does not have to stop an interrogation after either the right to silence or the right to an attorney have been asserted. Now, this happened in 89? This happened in 89, Your Honor. That's correct. What was the law on that in 1989? The law on that in 1989 was Edwards v. Arizona that requires the interrogation to cease. Edwards had been decided. Yes, Your Honor. That was decided in 1981. It was very clear. And, in fact, the Senate Police Department's own procedures also stated the interrogation shall cease when the right to an attorney or right to silence have been asserted. So he was ignoring both the Supreme Court case law and his own police department policy. But the trial court found that she didn't actually ask for a lawyer until the end of the interview. Yes, but selectively used that very same statement to assert and find factually that she didn't want it recorded. How objectively unreasonable is that, Your Honor? No, I want a lawyer is the same statement that the court uses to say she refused to have it recorded. What possible rational basis could there be for disregarding the second half of that statement? There is none. The thing that you have to recognize, too, as you quote the detective, what he said is what he said, and the record reflects what he said. That's correct. But what he also said, I'm not fighting you. We've got a case to decide, and we need all the help you can give us. I agree. And if you can give us help, then that's fine. I agree with that, Judge. All right. You have to let me ask the question if you want to answer it. What he assumed, as I read the record, was he didn't have to stop, but it couldn't be used at trial. That's correct. All right. But did you imply that, as you were stating? Oh, it's in my brief, Your Honor. Absolutely. He said I don't have to stop, that I can continue, that just that, but first of all, that's not what Edwards holds. The interrogation must be… No, I'm not suggesting that he was an authority on Edwards. All I'm suggesting is that as you quote what he said, you might want to also understand that what he understood was that he could continue the question, but it would not be admissible. That it would not be admissible. None of that. His job is to get the truth, and the defense attorney's job is to defend your defendant. Those are his words, Your Honor. Your time is short, and you probably want to save some time for rebuttal. I will, Your Honor. But I do have a question, which you might want to answer now, you might want to think about and answer when you come for rebuttal. In your reply brief, you raised for the first time a Brady claim, or at least you said Brady for the first time in your reply brief, having to do with the failure of the state to provide the… The disciplinary records, correct. I can't find where Brady has been raised before that. Do you have a viable Brady claim here? Your Honor, what… In all of the discovery motions, trying to get those from the beginning, from the trial and through the post-conviction proceedings, that has been the basis for it. Brady and other cases relying on Brady that there is a right to this impeachment. Let's start with the trial. Was Brady raised, cited as part of the request for the materials? Yes, I don't know, I don't know. I don't know, Your Honor. I believe that it was in the discovery motions. I know that it was in post-conviction proceedings. And was it raised on direct appeal? No, Your Honor. Nothing relating to the interrogation or confession was raised on direct appeal. It was then raised in the post-conviction motion, and Brady was cited. That's correct, Your Honor. I've read the judge's ruling, and she doesn't cite Brady at all. She doesn't make any reference to Brady. I haven't actually looked at your brief, but you tell me if I look at the post-conviction brief in the trial court, I'll find the citation of Brady. Your Honor, not in the post-conviction. I believe that it is in the discovery. There were separate discovery motions that were filed by post-conviction counsel in support of post-conviction discovery, and those were also filed in habeas proceeding. And then there was an appeal of the denial of the post-conviction. That's correct, Your Honor. Was Brady cited to the state appellate court? I'm not sure on that, Your Honor. I cannot recall exactly. Was Brady cited to the district court? Your Honor, I know that we cited cases that do rely on Brady, but I don't know if we specifically cited Brady. We argued that she had a right to that impeachment. What I'm trying to figure out is do you have a Brady claim here before us now? I mean, the fact that you only raised it in your appellate brief is something you usually have to raise these things in your principle brief. But even giving you the benefit of the doubt there, is there a constitutional claim here that's properly before us on that? Raising Brady or Brady-like claim, not necessarily Brady the case, but Brady the doctrine, the state's refusal to present exculpatory impeachment evidence. Your Honor, I do believe that there is. However, I am not sure that other than the discovery motions that the Brady argument was made all the way through. And the discovery motion was a blanket discovery motion? No, it was a discovery motion asking for disclosure of Salvate's personnel records relating to city truthfulness, credibility. Well, we call it Pitch's motion in California. What motion? I'm sorry. Never mind. It's an old sheriff. And what's important to remember as far as that goes is that at trial, the trial court judge actually did ask for in camera review, but only of Salvate's file as it related to any training he had in the prior five years. No, the district court did order an application. Yes, Your Honor, and we included that.  The district court, interestingly, went through and listed all of these other 18 cases in which Salvate had engaged in different forms of alleged misconduct involving five confessions that were suppressed, two or three remands to the grand jury for misrepresentations to the grand jury, and tainting lineups. And specifically went through and listed all of those in indicating that there is a basis for looking at his disciplinary record and that the trial court and or the post-conviction court should have ordered in camera review of his disciplinary records and release of anything that related to veracity. And that's what the district court did in ordering that disclosure, that discovery, finally. But they ruled against you on the merits. That's correct, Your Honor. So I'm trying to understand whether the district court believed it had this claim before it, the Brady-type claim. I can look back at the discovery order and see how that fleshed out, Your Honor. To be honest, the whole – that those were litigated before. Is that a certified question before us? It is not a certified issue. It is part and parcel of the interrogation itself and the admission of both the admission of the confession – They're very different claims. What happened in the interrogation room could – those arguments could stay in the fall even if it turned out they had no disciplinary record. That has to do with questions of the findings of the state court, state trial judge at the suppression hearing. Correct. The claim having to do with his disciplinary record has to do once the confession comes in. Then the claim is we have the right to present evidence that he was a liar. And that is all part of our argument that has been preserved and considered by the district court and the post-conviction court all the way up. But it came before us. Yes, Your Honor. How is it before us? Because all of claim one was certified by the district court. And that included the impeachment. You keep saying yes, but you don't listen to me. I just explained to you how those claims are different. Yes, Your Honor. And you said yes, yes, yes. And then you said it's all certified. Now, you want me to run my question by you one more time? This time listen. Don't talk. Okay? You can't talk and listen at the same time. One claim has to do with the judge's findings on the suppression hearing. It has to do with the findings. That's right. You're talking. You can't listen and talk. Okay? Just listen. Okay? This is your job now. The one claim has to do with what happens in the interrogation room and the findings of the trial judge about the voluntariness of the confession. That's one claim. That one's clearly before us. The claim having to do with Brady has to do with what evidence he presented in the trial before the jury. This claim is a very different claim. One could exist independent of the other. You could have an officer that has a perfect disciplinary record and you'd have the whole episode with the interrogation room. You could have an officer that didn't do any of that and he has a written confession, you know, capable of an open court, and yet you have an officer who has a bad disciplinary record. Why are these different issues? And why is the second one before us? Your Honor, it is before you because both in the post-conviction proceedings and in the district court, the inability of Deborah to fully impeach Saldate through evidence of misconduct in his other cases, through the disciplinary record. I don't think you understand my question. Those were all considered as part of this claim. I don't think you understand my question. We are limited under APFA to questions that are certified to us. Yes, Your Honor. Okay? We can't consider other things. We might be able to certify things on our own if they're properly presented in the record. But we are limited to questions that are certified or that we have certified ourselves. Okay? We have a certified claim having to do with a confession. How does that claim include this other question having to do with admission of or the failure to present evidence that could have been used as impeachment at heart? And that's what I'm trying to explain to you, Judge, that even though both of those issues were briefed to the district court and decided by the district court under Claim 1, and Claim 1 was certified by the district court. What does Claim 1 say? Claim 1 has to do with No, no, no. What does it actually say? Claim 1 What are the words? The overreaching tactics of Phoenix Police Detective Armando Saldate deprived Deborah of her rights against self-incrimination to due process, fair trial, and adjust sentencing determination under the 5th, 6th, 8th, and 14th Amendments. Where does that have to do with Brady? Where is there, is there, and the state failed to provide exculpatory evidence that could be used as impeachment at heart? Where is that within that question? I agree, Your Honor, as far as the title of that, and I don't know how better to explain it to you, that the trial court's failure to, the admission of this evidence followed by the failure to allow full impeachment of Saldate through his disciplinary record, through other cases, all violated the law. But that's what you just said is a certified question. That's right. You called it a title. There isn't more to it. There isn't a title and a body of it that's different. Correct. That's what was certified. Yes, Judge. That somehow you have to fit within that umbrella, or else the question isn't certified. Okay. That's the reality. And I can clarify that. I mean, with the supplemental, I can look at the certificate of appealability and show you together. If you look at that together with the district court's order denying habeas relief, you will see that they dealt with both of these issues under that claim, which was certified. Is it as simple as this? To establish overreaching tactics, you have to believe Deborah and disbelieve Saldate, and the disciplinary record helps you disbelieve Saldate. Yes, Your Honor. This all came down to a swearing contest, and she said, and we're saying, that not only was it not reliable what he said, because it was not corroborated, but then she was also unable to challenge his credibility through this other evidence. I see. So what you're saying is, if you had this evidence in the state it provided, and you should have, you couldn't have impeached him at the suppression hearing, and the judge might have disbelieved him. And at trial. You know, you're making things more complicated for yourself. Because, once again, you're not listening to the question. You're not listening to the question. You really need to listen. So what you're saying is, the reason it's part of the suppression claim is because if you had this evidence, the suppression motion would have come out differently because you could have impeached him. That's how it's tied in? That's correct, Your Honor. Okay. Well, we'll use up your time. We'll hear from the states. Thank you. May it please the Court, my name is Kent Catania. I represent respondents in this matter. Was there a Miranda card here? Was there a signed Miranda waiver? I'm not aware of there being a signed Miranda card. I have never seen a case where there's been no signed Miranda waiver. Is this practiced in Arizona? I'm not sure, Your Honor. Have you ever seen a case like this? I'm not sure that's been the issue. Have you ever recollected seeing a case where there hasn't been a signed Miranda waiver? I mean, I don't know any place in the civilized world in the last 30 years where people, where a state has filed a waiver of constitutional rights without a signed waiver. I've never seen the issue raised on appeal in my experience. What is there in the record to support the finding of a waiver? What is the evidence that she said, yes, if you don't have a card, you don't have a signed waiver, which we normally have. So what is it that you have that supports that finding? I think all we have is the line of questioning that continues. Just tell me what you have. I mean, read it. Tell me what you have. What is it that supports a finding that she said, I understand my rights and I waive them? The thing you normally find on a card when the officers obtain a signature. Where's the evidence? I'm not aware of whether there was a card. No, where's the evidence? I mean, there's no card. We know there's no card in the record. Right. So what is it that anybody said, either she said or he said or somebody else who has knowledge of what happened there said she waived her constitutional rights? The only evidence I'm aware of is simply evidence that was implicit in what transpired. There is no, I'm not aware, the answer to your question is I don't know. Why isn't that the end of the case for you? Why isn't that the end of the case? There's insufficient evidence. There's no evidence at all that she waived. Sure, there's evidence that he told her this, but we require more. The Supreme Court requires more. The Supreme Court requires a knowing and intelligent waiver. I don't see any evidence of that. I don't even see Saldana saying, yes, she said I waived. Yes, I said I don't want a lawyer. Yes, I'm ready to talk. He didn't say anything like that. All I recall of what Detective Saldana said. I don't want your memory. Go look at the transcript and point out to me anything that you find that supports the finding of waiver. Detective Saldana testified that she stated that she understood her rights. She nodded, and then she affirmatively did. Do you understand the difference between saying I understand my rights and I give up my rights? There are lots of things I understand that I don't give up. Do you understand the difference? Yes. Where does she say she said I understand my rights, I give up my rights? Where is that evidence in the record? I don't know that it is in the record. Why don't you lose in that case? Why isn't that simply a finding that's unsupported by evidence and therefore falls for lack of support? Why don't you spend the next 26 and a half minutes explaining to me how we can possibly sustain that finding? The judge made that finding. It was not challenged at the time she made it in the trial court at the suppression hearing. I'm sorry. Is this a waiver argument? You're saying she waived her challenge to the finding? Is that where you're going? Well, I think she did by not making any objection at that point and then by not raising it on direct appeal. This issue was never raised. Wasn't this raised on the post-conviction hearing considered by the state courts on the merits? It was raised in the post-conviction proceeding. The only issue that was raised was her suggestion that she had said she requested an attorney to call her saying I never affirmatively waived my rights. The focus of both the suppression hearing and the PCR was I asked for an attorney. Okay, so let me just make sure I understand where we stand. You more or less concede you don't have anything to support the finding. At least you don't. Okay, so now you're off on waiver. You're saying through all this stuff she never raised it. This is the first time you've heard the argument that there was nothing to support the waiver. You're surprised. Is that your position on behalf of the state of Arizona? The position is she did not raise it on direct appeal. That was the argument about why the claim is precluded. It should have been raised on direct appeal. Nothing was challenged on direct appeal relating to the suppression hearing. But you don't disagree with the general proposition that even though something in Arizona is not raised on direct appeal, it can be raised in post-conviction hearings, and if the state courts do not unequivocally find there was a waiver by failing to raise it on direct appeal and they actually go to the merits of the claim, I'm not talking about this case. This is a general proposition, then the waiver is waived, essentially. The state courts will have addressed the merits, and it's properly then considered in federal court. You don't quarrel with that proposition. What I quarrel with is what's raised in the brief. Why don't you answer my question, and then we can go on to what you want to talk about. So just answer. Do you remember my question? Relating to whether there's a waiver, an express waiver on the part of Deborah Milkey. No. I'm sorry. You know, I don't know why counsel don't listen to these questions. I mean, you think we just sort of ask them to hear ourselves talk? The question, you don't quarrel with the proposition that even though a matter is not raised on direct appeal, it can be raised on habeas, and if the state courts choose to consider on the merits, then the matter is properly presented and the waiver is waived. I'm not talking about this case. This is a general proposition. You don't quarrel with that. I agree the state court can reach the merits. And if the state court in this case did reach the merits on habeas, then whatever happened in direct appeal would be wiped out. No, not necessarily. Okay. If the state court is also free to find preclusion and then alternatively address the merits, and I think that's what happens here. Fair enough. Why don't we walk through that? Let's look at the state court opinions and see where that is. You have them, colleague? The PCR. The what? The PCR ruling is what I'm referring to. PCR, this must be in Arizona, too. Post-conviction release petition. Sure. And the PCR court states that the admission of the defendant's statements to Detective Saldate was addressed at a voluntary hearing and in connection with a motion to suppress. If the statements were improper or improperly admitted in evidence, the appropriate form for challenging the trial court's ruling was on appeal. If the statements have been improperly admitted, the Supreme Court would have addressed the issue whether or not it had been raised in the appellate brief since the Supreme Court reviews the entire record for any and all fundamental error. What I'm suggesting is the only possible. I'm sorry, but if that is the case, then you don't have to raise it in Arizona because the Arizona Supreme Court is one of those courts that has to consider all fundamental errors. So whether it's raised or not, it's properly presented to the state court. Is that correct? No, I think that was rejected in the Poland decision. And if the court, when we have fundamental error review, the fact that there's a fundamental error review does not automatically exhaust any possible claim that could have possibly appeared from the record. This court specifically said that that does not exhaust all possible issues. Okay. So in your view, the state appellate court did not address this on the merits? It did address it on the merits. It certainly did not address it on the merits in the direct appeal. There's nothing in the state post-conviction appeals court. I believe this was just a silent denial of the post-conviction ruling by the trial court. There wasn't an opinion. There wasn't an appellate ruling? No. Okay. So what were you reading from? Were you reading from the trial court's assertion? This is the trial court's ruling regarding preclusion when the issue is raised for the first time in the post-conviction proceeding. Okay. So from my perspective, by suggesting that the only way this would have been, if this was reviewed by the state Supreme Court, it would have been reviewed in the context of fundamental error. And the only way that you review it in the context of fundamental error is if the issue were not raised on direct appeal. And that certainly is the case. We can look at the direct appeal brief. We can look at the opinion from the Arizona Supreme Court. And there's absolutely no mention of the suppression issue. Okay. And where did you just read from? It's from excerpt of Record 10 at pages 142 to 143. Okay, I got it. Okay. So your position is that this was waived? That this claim was precluded when it was raised in the ‑‑ there was a finding of preclusion when it was raised in the post-conviction proceeding. And that there's an alternative ruling on the merits that doesn't vitiate the procedural bar. And where is the ruling on the merits? The ruling on the merits is what continues the post-conviction ruling. The court goes on to that. What I mean is where specifically in the ruling does the court address this claim, the waiver? I'm sorry, the waiver of Miranda rights. I don't think the court goes specifically into the ‑‑ actually, I don't have the post-conviction ruling. It's here, excerpt of Record 10. I just don't have it here in front of me. The post-conviction judge ‑‑ Do you think the court allowed the excerpt of Record? Only some of them. The trial court confirmed its ruling that ‑‑ You didn't think they were important? I did. I just didn't carry all of them with me. The trial court confirmed its ruling that ‑‑ You must have thought it was very important. I thought it had the most important aspect of that. The trial court confirmed its ruling that it had found that the ‑‑ that Ms. Mielke's statement was made voluntarily and knowingly. And that's all that there is relating to that. There's no further discussion of, there wasn't an express request to have, that he should have said, do you waive these rights? Is it your position that a finding of voluntariness is a finding of implied waiver? I think there is an implied waiver yet. Is implied waiver enough for the Supreme Court? Or do you have to have express waiver of Miranda rights? I don't know the answer to that question. Particularly when the issue is never challenged, I think it should be enough when the defendant never challenges the ruling at the time that it's made in the trial court at the suppression hearing, and then it's not raised, no one ever challenges that ruling. It's a state's burden. It's a state's burden to overcome the presumption of constitutional right and the absence of waiver. It's up to the state to present evidence, and it's up to the state to ensure that there are findings supporting that. And the state presented the testimony from Detective Saldate. Do you understand this? Yes. Do you understand these rights? Yes. And did she waive the rights? She didn't ask that question. Well, then they go on to ask questions, and she agrees to answer questions. So that's the only argument I have. Right, but if you require express waiver, that's a question not asked. Right. If you require express waiver, that's not in the record. You haven't heard the cases to know whether they do or don't. I cannot tell you. They do. You do require express waiver. Well, I think, again, I think. . . What about this argument that the trial court accepted her statement when she said, they said, do you want the request? She says, no, I want my lawyer, and the trial court accepts the no, but so it doesn't make anything of the. . . It doesn't take into account that she says, no, I want my lawyer. I don't want to record it because I want my lawyer. What do you make of that? I'm not sure I understand it. The trial court simply did not believe the assertion that she asked for a lawyer. They're separate parts of the statement. The trial court believed, yes, I. . . No, I don't want this recorded, and disbelieved her statement that she wanted an attorney. It's also important to note that Deborah Mielke did not testify at the suppression hearing. This is coming in through her mental health expert. You have Detective Saldate there testifying. Ms. Mielke could have testified, and her testimony would not have been used against her. There was no objection by the prosecution to the other witnesses who were testifying as to what Mielke was saying? There's no objection, but certainly from the trial court's perspective, in analyzing Detective Saldate's testimony, you have this testimony coming in secondhand with no opportunity to cross-examine Ms. Mielke. That's why a hearsay objection is used. But maybe the prosecutor didn't want to use a hearsay objection because he thought that these witnesses were going to say something helpful to the prosecution. I'm not sure of the reason. It is clear that on at least one . . . In one instance, the second witness that testified at the suppression hearing stated that he didn't believe that Ms. Mielke had ever said that she did not want the . . . that Detective Saldate had not asked her whether she wanted the confession to be recorded. And she herself testified at trial and disputed or disagreed, obviously, with that statement. The trial court could have found that she refused . . . that she didn't want the recordation based on what Saldate said at the suppression hearing. It didn't have to go to what she said. No, that's true. I think Saldate's testimony is enough. I'm just suggesting this is a fundamental distinction between this case and Taylor v. Maddox. In that case, you had testimony from the defendant who said, I specifically asked for an attorney there in an elevator going up to the room to be interrogated. And there's no countervailing . . . there's no testimony from the defective who was in the elevator with this 16-year-old boy. And so, from there, there's nothing that contradicted the boy's testimony at the suppression hearing that I told this attorney in the elevator that I wanted an attorney. We don't have testimony from Deborah Mielke that's not contradicted by Detective Saldate. All we really have is Detective Saldate's testimony. You also don't have a signed confession, as they have in Taylor, and you don't have a signed waiver. I mean, it's all troubling that you've got this small room, nobody's in there. The officer is directed by a supervisor to bring recording equipment. He doesn't do that. There's no tape recording. There's no one watching through two-way mirrors to witness what happens in there. There's no signed statement. His notes get destroyed three days after the event. He destroys his notes. I don't think I've ever seen a case like this. This becomes entirely a swearing contest, and it sort of makes a mockery of Miranda warnings, if they can be so easily cast aside based on nothing at all visible from the defendant. I certainly would agree that it would be better to have recorded confessions, and that's certainly the advice we give repeatedly to record all confessions. I don't disagree with that. But I'm not aware of any Supreme Court authority that says you have to throw it out if it's not reported. I think it's important to note that when you go through Ms. Mielke's testimony at trial, she really doesn't dispute anything about the facts and circumstances of the interview other than the, I asked for an attorney. Beyond that, there's really nothing that suggests her will was overborne by some overreaching tactic. So to the extent there's some concern that something went on in this room, I don't think that concern is well-founded because Ms. Mielke herself testified at trial and didn't raise anything about the circumstances of the interrogation. Her real argument is, he misinterpreted what I said or he lied about what I said. And that's simply a credibility issue that was before the jury. The jury heard her testimony. They heard Detective Saldate's testimony. And, in fact, I think it helped to a certain extent Ms. Mielke that she was able to say, Detective Saldate's supervisor told him to record this interview, and he didn't. The jurors heard that. That came out during Detective Saldate's testimony. They were aware of the circumstances of the interview, and it really does come down to a They were not aware of his prior misconduct. Well, it's not admissible in Arizona to, under Rule 608, it does not come in under Rule 404B. Other acts don't come in. It doesn't matter. It's constitutionally required. The Sixth Amendment trumps all those rules of evidence. This is what the Supreme Court has told us. So the fact that the Arizona rules of evidence happen not to allow this is really of no consequence at all. This is the kind of impeachment evidence that the state must allow. I don't think, I mean, I disagree with the type of evidence. In fact, Detective Saldate's personnel records show that he'd been commended for his performance. The rules of evidence are designed to avoid having to go through a mini-trial of every case that a detective has testified in the past. The detective acknowledged that he had questioned people after they had asked for an attorney, and he said, I understand that, and I understand that it won't be admissible at trial. I view my job as being different. I'm there to get information. He testified that in each instance, he would write down that the person had invoked their rights. I think that came up in, I think it's the Running Eagle case, came up in the suppression hearing. And he specifically testified, yeah, I noted that, and then I kept talking to him. I understand that. So I think it does, it still does come down to a swearing contest. Ms. Mielke suggests repeatedly in the brief that she doesn't stand a chance in a swearing contest with a police officer. And I would submit that that's illogical. This is a single mother without a criminal history who is working to support herself and her child. There really isn't a built-in bias. Usually we think of someone who has a criminal record who's going to be able to stand against a police officer, and that's certainly not the case here. There's nothing that would create this imbalance where she would automatically lose a swearing contest with a police officer. On this point, Mr. Catani, what's the narrow issue before us? The issue here is in terms of whether her confession was voluntary in knowing and whether his overreaching tactic led her to confess. Under EDSA, the issue is whether we can say that the last reasoned decision of the state court was not based on a reasonable basis. Right. So we're not here de novo deciding whether this was fair or whether it was accurate or whether it was professional or any of those other things. We have to decide whether the trial court, which is the last reasoned decision, I guess, on this issue, had a reasonable basis for making it. Right, in addition to the issue of whether it's— Not whether it was right or whether it was wrong, but whether it was reasonable. Right, in addition to the issue of whether it was— In the absence of evidence supporting wireless findings, there would be a reason for us to find it not reasonable. Yeah. So if we look and we say there's no evidence supporting waiver of the right, that would be encompassed in the question presented to us on whether or not the state court findings are reasonable. Yes, if you don't accept the argument that there's an implied waiver, and then also the argument that this claim is precluded because it could have been raised on direct appeal. Well, I'm sorry, you just said, look, you answered that last question by saying, yes, that's a question before us, whether or not the findings of the state court are reasonable. You agree, do you not, that a finding that's based on no evidence is not a reasonable finding? It's not possible, right? Yeah. So then it seems to me you've said the question is before us, whether or not we have to look and decide whether or not this is a finding to which we can defer, we have to look and see whether or not there's evidence supporting it. Yeah, I would agree with that. Okay. I would like to simply point out some supplemental authority on the F6 issue, which is the cruel handicer to Cravecrong, and I neglected to cite the Brown v. Sanders decision from the United States Supreme Court. And this just goes to the issue of whether a finding regarding cruel handicer to Cravecrong, whether it would be harmless error if the aggravator is struck and there is another aggravating circumstance there. I will submit that. You know, if you have additional authorities, the way to present them is through a 20-J letter. Yes, and I will do that. I was just mentioning. I mean, this wasn't raised on the opening argument. I don't know if there's any need for you to address it here. Is there anything else? That's all I have, Your Honor. Okay, we'll give you a couple of minutes for rebuttal. May I ask you a question? And I ask this also of the Attorney General from Arizona. Has any consideration been given in this case to mediation by our court appellate commissioner? No, Your Honor. I might think about that. Thank you for that suggestion. I just have a couple of points to make very quickly. First of all, on whether the issue is properly before the court. The district court specifically found that this issue is properly before the court because the state court's preclusion determination was not an adequate independent state procedural bar because she both relied on the provision of under Rule 32, which is the post-conviction proceeding, that Debra waived the issue for not raising it on direct appeal. And secondly, that it was already considered by the Supreme Court and then went on also then to consider it on the merits. And those three elements, which lead to a great deal of ambiguity, combined with the fact that ineffective assistance at trial and appellate counsel were both raised in the post-conviction proceeding relating to this very issue. The court found that it was not an adequate procedural bar and the issue is properly before the court. Secondly, although Debra didn't testify at the suppression hearing, the court not only allowed Dr. Cassell and Kirk Fowler's testimony regarding her hearsay information, but the court also allowed a tape-recorded interview into evidence that Dr. Cassell did of Debra in jail while he was treating her where she specifically recounts what happened during the interrogation and states very clearly on that that she said, no, I want a lawyer. So her testimony, and there was no objection to that, was allowed if the court considered it. Well, it's a little strange because it's not sworn. I mean, she's not on bail, so you can say anything about she's not subject to cross-examination. And we did raise ineffective assistance at counsel for failing to call her as well, Your Honor. But that claim is not, is that claim before us? No, Your Honor. It was considered on the merits in district court but not certified by the district court, which we found kind of inexplicable because the claims are really very related. It's not very inexplicable. Your client testified before the jury, and the jury didn't believe her. Counsel at the suppression hearing could have foreseen the same result. I mean the part that it's not certified, Your Honor, because they're so related, these ineffective assistance at counsel claims relating to the suppression hearing and the confession, that those are not certified but this one is. And I actually footnoted in my brief and asked the court to also consider those and certify those. But what do you do if we do go ahead and look at it? What is your answer to Judge Baird's question? So now we've undone the lack of certification, let's say, hypothetically. You still have substantive questions, Judge Baird. Why isn't this perfectly reasonable for the lawyer not to put on her on a suppression hearing when we now know that the jury doesn't believe it? Why isn't that something inherently a reasonable thing for you? Because this was a swearing contest between Detective Saldati and Deborah, and we took the position that it really wasn't necessary for him to put her on because of the tape recording, in particular with Dr. Cassell. But it was certainly below minimum standards because the entire – because there was no corroboration of what happened in that room, that those, you know, two witnesses. Did the trial counsel explain why he didn't put her on the stand? No, Your Honor. That was not addressed from what we could see in either state or possibly to avoid, I don't know, any inconsistencies, but she has stated the same thing all the way through. She has not wavered in her position. So she is dependent? Yes, Your Honor, Ms. Mielke. But when this was considered in the district court, you said it was considered in the district court, so normally what happens is you go to the lawyer and say, why did you not put – you know, why did you do what you did? And the lawyer either gives a more polite explanation or sometimes says, oh, I goofed, sorry, I'm so stupid, my bad, or something like that. Is anything like that happening here? He does have an affidavit. He submitted an affidavit indicating that he was ineffective or believed that he was ineffective in the suppression hearing at a trial under Strickland. And the only other point I'd just like to briefly make is that Taylor is – Does he refer to the fact that he didn't put her on the stand? He does not refer specifically to that. I thought you were answering the question in response to the questions regarding that, and my recollection is he didn't. No, he didn't. It was a much more general affidavit, you're correct. And the only other point with Taylor is that although both of the detectives – there were two detectives in the room, Detective Reming and McLineman, and this court criticized that they didn't have both detectives testify at the suppression hearing, but there was certainly testimony from one of them, from Reming, or Rem-I, I'm not sure how you pronounce his name, as to what happened during the interrogation. On this record, when there were two people in the room and what happened in the room was critical, and one person to whom it was most important is not called to the stand, there should be something in the record other than what we have to imply. And we have to imply because there's nothing in the record to imply. And again, the only thing that I can indicate is that the trial judge did expressly rely on the tapes of Deborah. Those were Deborah's statements to Dr. Cassell explaining what happened during the interrogation and on Dr. Cassell and Kirk Fowler's explanation of what Deborah told him. And there's a burden, obviously, under Miranda that if at any point a confession, it's a liability or it becomes questionable, even during trial, that the court has a duty to suppress that. And so it became very clear during trial that Deborah did assert her rights and that she did not waive her Miranda one. You mentioned Fowler. Fowler testified, if I recall the record correctly, that Mielke told him she asked for an attorney, quote, during the interrogation, unquote. Was there anything else in the record regarding Fowler as to at what point during the interrogation she asked for it? Because if during the interrogation is at the beginning of the interrogation, one result. If during the interrogation is at the end of the interrogation, another result. If it's in the middle of the interrogation, perhaps a different result. I'm not exactly sure if he specifically addressed it, but I believe he did say that she asked for an attorney at the beginning of the interview, And that would be in Fowler's testimony in the suppression hearing. In the suppression hearing and in Dr. Cassell's. Both of them testified to that. Cassell talked about when she was Mirandized. She related that she was Mirandized to Cassell. He didn't say anything about an attorney request. Fowler said she requested an attorney during interrogation. But you say Fowler said that not during but at the beginning of interrogation. I'll check that out. Okay. And again, the tape was played. I encourage you to look at the transcript because it is part of the excerpt of record, the transcript of Dr. Cassell's interview of Deborah that goes through that and makes that very clear. Does the tape that Cassell played of Deborah Milkey talk about when she asked for the attorney? Yes, Your Honor. Immediately after her Miranda rights were read, Deborah said that he then asked if she wanted it recorded. And she said, no, I want a lawyer. Heard Fowler was a little more, he said, I can't remember exactly what she said. I think she said, I think I want a lawyer, but that was not what Deborah said either in that interview or at any point during trial. And it was a clear assertion of her right to an attorney. Thank you. Thank you. We'll take a short break before the next.
judges: Kozinski, Farris, Bea